# Appeal of Samuel J. Van Stavoren, Trustee et al.

When a debtor assigns bona fide all his interest in a partnership to a trustee for certain of his creditors, and on the same day confesses a judgment to the same trustee in trust for the same creditors and debts, the trustee cannot enter up judgment, levy on and sell, by the sheriff, the debtor's interest in the said partnership, receive the proceeds of the sale, and subsequently, on a settlement of the firm's accounts, claim the balance due the debtor under the assignment as against the purchaser at the said sheriff's sale.

. Such estoppel of the trustee is not affected by his having given notice at the time of the sale that the debtor had assigned his interest prior to the execution and that no title would pass by the sale.

(Argued January 24, 1888. Decided February 6, 1888.)

January Term, 1888, No. 48, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Court of Common Pleas No. 1 of Philadelphia County confirming the report of an auditor appointed to distribute the funds in the hands of the liquidating trustee of a partnership. Affirmed.

The facts of the case as found by the auditor are substantially as follows:

November 1, 1884, an attachment was issued under the act of March 17, 1869, by Thomas W. Wetherald against one D. D. Shupe, attaching all Shupe's interest in the Shupe & Noble

NOTE.—For the estoppel of one who has secured the decree to which he objects, see note to Wolfe v. Gordon, 4 Sad. Rep. 307.

Furniture Company, Limited. November 20, 1884, Shupe made a bona fide and valid assignment to Samuel J. Van Stavoren, as trustee, of all his interest in the company, and on the same day confessed judgment to him, as trustee for the same parties and the same debts. November 25, 1884, judgment was entered of record, and a fi. fa. on partnership interest was issued and levied on the right, title, and interest of D. D. Shupe in the company. December 1, 1884, judgment was recovered in appellee's suit, and a like fi. fa. issued and levied on "the right, title, and interest of D. D. Shupe" in the company. December 6, 1884, the court below set aside the attachment, under the act of 1869, in appellee's case.

To this action, on the same day, Wetherald sued out a writ of error. December 6, 1884, the sheriff's sale of all the right, title, and interest of said Shupe in said company took place under the writ of Van Stavoren, his writ being the first in point of lien. Van Stavoren's counsel on that writ notified bidders at the sale that the interest of David D. Shupe had been assigned prior to the execution, and that no title would pass; he did not say what interest of David D. Shupe had been assigned, when it was assigned, or to whom it had been assigned. Notwithstanding this notice, the said attorney for Van Stavoren directed the sheriff to continue the sale. Thomas W. Wetherald was present at the sale and bid until the sum of $1,850 was reached, when all the right, title, and interest of David D. Shupe, in the Shupe & Noble Furniture Company Limited, was knocked down to Mr. Wetherald by the sheriff. The sheriff's bill of sale was made to Mr. Wetherald, and he paid his money, $1,850, to the sheriff.

Subsequently, the attorney for Van Stavoren collected the money from the sheriff, and it is credited upon his execution. Wetherald issued an attachment execution against this fund. After the sheriff's sale, the Shupe & Noble Furniture Company, Limited, was duly wound up; and Mr. Wetherald, the holder of the sheriff's bill of sale, endeavored to collect the share of David D. Shupe in the company.

Van Stavoren then appeared before the auditor and claimed that the sheriff's bill of sale was a nullity because prior to the execution Shupe had assigned all his interest in the firm to him, Van Stavoren. This claim was objected to because Van Stavoren was estopped by the sheriff's sale, and by his receipt of the proceeds thereof.

Upon this question the auditor reported as follows:

It is an undoubted rule of law that "a party cannot, either in the course of litigation or in dealings *in pais,* occupy inconsistent positions." Bigelow, Estoppel, 4th ed. p. 642.

He will not be allowed to affirm and deny in the same breath. It may, therefore, be laid down as a broad proposition, that "one who has taken a particular position deliberately, in the course of a litigation, must act consistently with it."

This principle is illustrated in the case of Morris v. Rexford, 18 N. Y. 552. There the plaintiff had sold certain goods to defendant for cash. The goods were delivered to defendant, but on his failure to pay cash plaintiff obtained a redelivery of the goods by a writ of replevin. When he brought suit subsequently, for the price of the goods, the court held that his action of replevin was in disaffirmance of the contract of sale, and evidence in bar of the action for the purchase money. When the goods were delivered to defendant, and he failed to pay for them, one of two courses was open to plaintiff. He must either disaffirm the sale and get possession of the goods by a writ of replevin, or affirm the sale by suing for the purchase money. He could not do both.

Another illustration of the principle is found in the case of Fields v. Bland, 81 N. Y. 239. There the plaintiff arrested the defendant, alleging that she had sold goods intrusted to her for sale, and failed to account for the proceeds. Upon proceedings to vacate the order of arrest, it appeared that the plaintiff had accepted from the defendant a confession of judgment; the statement upon which it was entered declared that the property was "sold and delivered" to her, and that for its value she was indebted to plaintiff. After the facts alleged to show conversion were known to the plaintiff, he issued execution upon the judgment and collected a part thereof. It was held that this judgment was conclusive against the plaintiff on this question; that by accepting and enforcing it by execution he must be deemed to have made his election to treat the property as that of the defendant under a sale from him, and that he could not now change his ground. In this case also, plaintiff had one of two courses to pursue; he could either proceed against defendant criminally, for failure to account for proceeds of goods left with her for sale, or he could, as he did, treat it as a case of goods sold to her and

proceed to collect their value from her.   The court would not allow him to do both.

The Pennsylvania cases are to the same effect.   Vetter's 'Appeal, 99 Pa. 52, illustrates the principle.   There the creditors of a certain tenant of a planing mill, with the machinery and fixtures, levied upon all the personal property in said mill, including the machinery and fixtures.   The landlord claimed the whole of said personalty as his property, wherefore the tenant's creditors were compelled to give an indemnifying bond to the sheriff.   They did so, and the sheriff sold the property.   On the   distribution   of   the   fund   raised   by   the   sale   the landlord claimed the proceeds for rent in arrear.   The execution creditor objected to the claim of the landlord "because, having claimed the goods as his own, he is estopped from claiming the proceeds of the goods for rent."   The court held that by his claiming the goods levied upon as his own he assumed a position hostile to the proceedings which brought the money into court.   And, therefore, under "the authority of Bush's Appeal, 65 Pa. 363, he cannot be permitted to take any of that money."

Bush's Appeal decides, *inter alia,* that "when money is raised upon an execution and paid into court for distribution, a party who sets up a title adverse to the proceeding cannot come in and claim any share."   The converse of the proposition must also be true, that he who comes in and participates in the distribution of a fund raised by execution and claims that fund by virtue of its execution being first in the sheriff's hands, affirms that the money for distribution was the proceeds of his own execution.   He could have no claim at all on any other basis.

Edward's Appeal, 105 Pa. 103, is another case that illustrates the principle.   There the landlord, when his tenant's goods were levied upon by his creditors, claimed that the goods were his own and not the tenant's.   When the goods were sold and the landlord claimed from the proceeds for rent in arrear, the court held that, as he first gave notice that the goods were his own, he could not subsequently claim any part of the proceeds as landlord.   He could not be allowed to play what the court calls a double-handed game.

Applying the principles of the foregoing cases to the facts of this case, the auditor is of the opinion that Van Stavoren, as trustee, cannot now claim the interest of D. D. Shupe in the

Shupe & Noble Furniture Company, Limited, by virtue of his assignment of November 20, 1884.

For these reasons and upon these last three authorities, the auditor is constrained to overrule the claim of Van Stavoren, trustee, to this interest of D. D. Shupe, in the Shupe & Noble Furniture Company, Limited, and awards the same to Lewin W. Barringer, Esq., as attorney for Thomas W. Wetherald, who purchased it at sheriff's sale.

To this report, Van Stavoren, trustee, filed the following exceptions:

The auditor erred: (1) In deciding that Van Stavoren, as trustee, cannot now claim the interest of D. D. Shupe in the Shupe & Noble Furniture Company, Limited, by virtue of his assignment of November 20, 1884; (2) in deciding that exceptants are estopped from claiming the interest formerly of D. D. Shupe; (3) in awarding the interest formerly of D. D. Shupe in the Shupe & Noble Furniture Company, Limited, to Lewin W. Barringer, Esq., as attorney for Thomas W. Wetherald; and (4) in not awarding said interest to exceptant, Samuel J. Van Stavoren, trustee.

Upon these exceptions the auditor reported as follows:

In order to understand accurately the force of the argument upon the exceptions it is necessary to restate the exact ground upon which the auditor in his report decided against the claim of the exceptant.

The rule of law which prevents the exceptant from claiming this interest of D. D. Shupe is found in the following sentence: "A party cannot, either in the course of litigation or in dealings *in pais,* occupy inconsistent positions; it may, therefore, be laid down as a broad proposition that one who has taken a particular position deliberately in the course of a litigation must act consistently with it."

The facts which the auditor regards as such as to prevent the trustee from claiming the interest of D. D. Shupe may be restated as follows: When Van Stavoren, the trustee, took the assignment of November 20, 1884, he took also, as trustee for the same party, a judgment note for the same amount. He entered that judgment note in the prothonotary's office and issued execution upon it. The writ which he put in the sheriff's hands di-

rected the sheriff to levy upon the right, title, and interest of Shupe in the Shupe & Noble Furniture Company, Limited. By virtue of that writ the sheriff exposed to sale the right, title, and interest of Shupe in said company. That right, title, and interest was sold by the sheriff; and Van Stavoren, the exceptant, claimed the proceeds of that execution before a referee, because that execution was first in the sheriff's hands. The referee awarded the proceeds to him on that very ground. It was because of the facts as above set forth that the auditor decided against the claim of the exceptant in this case.

The argument of the counsel for the exceptant was a very able and ingenious one, but it has failed to convince the auditor of error. The exact point of the objection to the report of the auditor, as made by exceptant's counsel, may be stated as follows: The assignment to Van Stavoren, as trustee, was an assignment of Shupe's interest in the company up to the date of the assignment, to wit, November 20, 1884; and what was sold by the sheriff was the interest Shupe had between that date and December 6, 1884, the date of the sheriff's sale. Although it does not appear that Shupe had acquired any interest between those dates, it was argued that the mere possibility that Shupe might have acquired an interest between those dates was sufficient to justify a levy by the sheriff upon whatever that interest might be. And whether or not any interest had been acquired the auditor was not called upon to decide. This is a very ingenious argument. and the auditor can conceive that circumstances might have so occurred in this case as to make it not at all inconsistent for the plaintiff in the writ first in the sheriff's hands to claim also as assignee of an interest of Shupe in the said company.

The authority for this argument is found in the case of Green, v. Watrous, 17 Serg. & R. 393. In this case Watrous bought the title to the real estate in question. The title came through a sheriff's sale, upon proceedings on a mortgage and by means of subsequent conveyances. The defendants were in possession. Watrous purchased two judgments against defendants, and proceeded to sell the interest of the defendants in the land, the title to which he had already acquired as above set forth. "At the time of the sale he gave notice to all that were present that he claimed the title to the land, and that he only sold the possession, or right and title of Obadiah Green, and that he had an eject-ment pending for the title, and that he should go on with it; the

sheriff also gave notice, at the same time, that he only sold Green's interest; the notice was repeated, and in the presence of David Green himself." David Green was the purchaser.

It was held that, under such circumstances, plaintiff, Watrous, was not estopped in his action of ejectment as against David Green, by reason of selling the interest of Obadiah Green in the land. The reason of the decision is very plain, for the plaintiff in the writ very carefully announced at the sheriff's sale that he claimed the title to the land himself, and that he only sold the possession or right and title of Obadiah Green, and that he, the plaintiff, would pursue his action of ejectment pending for the title.

The distinction between that case and the one before the auditor is very plain. There the plaintiff, as already pointed out, was very careful that purchasers should know just what they were buying, and he described it at length at the time of the sale.

In the case now before the auditor the facts are very different.

The auditor then restated the facts of the case, and concluded by dismissing the exceptions.

The same exceptions were filed to the final report of the auditor, and dismissed by the court without an opinion, and the report confirmed and the fund awarded to Thomas W. Wetherald.

The assignments of error specified: (1–4) The dismissal of the above exceptions; (5) the confirmation of the auditor's report; and (6, 7) the distribution of the fund.

*Alexander Simpson, Jr.,* for appellants.—Wetherald only purchased at the sale a right to compel a settlement of the partnership. Act of April 8, 1873, P. L. 65; Durburrow's Appeal, 84 Pa. 404; Gregory's Appeal, 15 W. N. C. 525.

What was assigned was the interest Shupe had November 20, 1884. What was sold was the interest he had December 6, 1884. The purchaser took the risk of his having any interest.

He who claims an estoppel must prove every element of it. Bigelow, Estoppel, 679, 552; Wright's Appeal, 99 Pa. 425.

The sale did not refer to the assigned interest. The defendant had transferred that. The sale only covered any other interest he might have. Green v. Watrous, 17 Serg. & R. 398; Hill v. Epley, 31 Pa. 331.

A grantor is not estopped from setting up a subsequent title when his first deed was only of his "right, title, and interest." Hoxie v. Finney, 16 Gray, 332; Brown v. M'Cormick, 6 Watts, 60, 31 Am. Dec. 450; Brown v. Jackson, 3 Wheat. 452, 4 L. ed. 432; Hope v. Stone, 10 Minn. 141, Gil. 114; Comstock v. Smith, 13 Pick. 116, 23 Am. Dec. 670; Herrod v. Blackburn, 56 Pa. 103, 94 Am. Dec. 49; Holton v. Walter, 3 Sad. Rep. 538.

Actual notice was given of the assignment, so there can be no estoppel. Barnes v. M'Clinton, 3 Penr. & W. 67, 23 Am. Dec. 62; Weeks v. Haas, 3 Watts & S. 525, 39 Am. Dec. 39; Porter v. M'Ginnis, 6 Watts & S. 502.

Moreover, neither party knew at the time of the sale exactly what interest would pass thereby. As the record then stood, the assignment passed a good title. But Wetherald had taken a writ of error; and if he was sustained the assignment was cut out, for his attachment antedated the assignment. It was by his wilful act, therefore, that the title to be obtained by the sale was put in doubt, and that would prevent the estoppel from arising: for unless the party against whom the estoppel is urged had full knowledge no estoppel arises. Lawrence v. Luhr, 65 Pa. 236; Wright's Appeal, 99 Pa. 425; Bigelow, Estoppel, 552.

Worse still, all that appellant did he had a legal right to do under the judgment; and that right cannot be attacked collaterally, except for collusive fraud. Reehling v. Byers, 94 Pa. 316; Dougherty's Estate, 9 Watts & S. 196, 42 Am. Dec. 326; Lewis v. Rogers, 16 Pa. 18; Thompson's Appeal, 57 Pa. 177; Sheetz v. Hanbest, 81 Pa. 100; Second Nat. Bank's Appeal, 85 Pa. 528; S. C. 96 Pa. 460; Lennig's Appeal, 93 Pa. 307; Otterson v. Middleton, 102 Pa. 78; and Meckley's Appeal, 102 Pa. 536.

But here the absence of collusion is found as a fact by the auditor.

In Stewart v. Stocker, 13 Serg. & R. 204, 15 Am. Dec. 589, it is said that the right to an execution cannot be collaterally attacked, except for collusive fraud; that the execution is on the same plane as the judgment itself; that until quashed or reversed it is good, and if it is the first lien by reason of being the first levied, must be paid first, although wrongfully issued. See also Stewart v. Stocker, 1 Watts, 139; Lowber's Appeal, 8 Watts & S. 389, 42 Am. Dec. 302; Elliott v. Brinzer, 1 Pearson (Pa.) 39.

This principle applies, although the defendant was dead when

the judgment was entered (Yaple v. Titus, 41 Pa. 195, 80 Am. Dec. 604; Carr v. Townsend, 63 Pa. 202); or was a *feme covert* (Conlyn v. Parker, 113 Pa. 29, 4 Atl. 175); and although it was a fraud on the defendant himself. Thompson's Appeal, 57 Pa. 177.

It is matter of no moment that the defendant had no interest in the property levied on; a supposed interest may be sold. Jarrett v. Tomlinson, 3 Watts & S. 114; Seitzinger v. Fisher, 1 Watts & S. 293; Taylor's Appeal, 93 Pa. 21; Wiser's Appeal, 8 W. N. C. 354; 9 W. N. C. 508.

It is of no moment that this was a confessed judgment, for that possesses all the qualities of a judgment on a verdict after trial. Act of February 24, 1806, Purdon's, 953, pl. 41; Braddee v. Brownfield; 4 Watts, 474; St. Bartholomew's Church v. Wood, 61 Pa. 96; Montague v. McDowell, 99 Pa. 268.

At any rate the estoppel should not apply to this fund. It should have applied to the distribution of the fund created by the sheriff's sale. Again, Wetherald by his attachment execution prevented the distribution of this fund, and the estoppel could only apply on the receipt of the money. Myers v. White, 1 Rawle, 353; Porter v. M'Ginnis, 6 Watts & S. 502; M'Kee v. Gilchrist, 3 Watts, 230; Craver v. Miller, 65 Pa. 456; Foulk v. M'Farlane, 1 Watts & S. 297, 37 Am. Dec. 467; Hays v. Heidelberg, 9 Pa. 203; Green v. Watrous, 17 Serg. & R. 393.

*Lewin W. Barringer,* for appellees.—Cited Edwards's Appeal, 105 Pa. 108; Vetter's Appeal, 99 Pa. 52; Bush's Appeal, 65 Pa. 363; Daniels v. Tearney, 102 U. S. 415, 26 L. ed. 187; Bigelow, Estoppel, 642, 687.

The authorities cited by the appellants are inapplicable.

PER CURIAM:

As the court below must necessarily be governed by the decisions of this court, it could not properly refuse to dismiss the exceptions to the auditor's report; and as that report well states the law governing this contention, we affirm the decree for the reasons therein given.

The decree is affirmed and the appeal dismissed, at the costs of appellant.